## WEATHERFORD, MINERAL WELLS & N. W. RY. CO. v. BAUCOM et al. (No. 7167.)

(Court of Civil Appeals of Texas. San Antonio. May 14, 1924. Rehearing Denied June 18, 1924.)

**1. Appeal and error ⊕⟶1062(1)—Finding of failure to signal held immaterial in view of finding that it was not proximate cause of disaster.**

In an action against a railroad company based on collision with an automobile, finding that no signals were given at the crossing, even if not supported, was immaterial in view of a finding by the jury that such failure to warn was not the proximate cause of the disaster.

**2. Railroads ⊕⟶348(5)—Finding of negligent speed warranted.**

Evidence, though conflicting, *held* to support verdict that train was moving at a reckless rate of speed within a city when it struck deceased.

**3. Death ⊕⟶99(4)—$8,640 damages not excessive.**

A verdict of $8,640 for the death of a man who left a wife and two minor children for whom he was making a good living *held* not excessive.

**4. Railroads ⊕⟶350(11)—Negligent speed held for jury.**

In an action against a railroad company for killing a person at a crossing, instruction to return a verdict for defendant *held* properly refused.

**5. Trial ⊕⟶350(6)—Sufficient for jury to find train was running at reckless rate of speed at time of accident.**

In an action against a railroad company for causing death, it was sufficient for the jury to find that the train was moving at a reckless rate of speed at the crossing where deceased was killed, and to have required the jury to have answered what the rate of speed of the train was at 30 feet of the crossing would have been improper.

**6. Trial ⊕⟶350(1)—Refusal to submit details covered by charges given jury held proper.**

Where every issue material to the facts of the case were submitted by the court, a refusal to submit details covered by the charges given to the jury was proper.

Appeal from District Court, Palo Pinto County; J. B. Keith, Judge.

Action by Mrs. M. E. Baucom and others against the Weatherford, Mineral Wells & Northwestern Railway Company. From judgment for plaintiffs, defendant appeals. Affirmed.

George Thompson and R. S. Shapard, both of Dallas, and Shropshire & Bankhead, of Weatherford, for appellant.

Penix, Miller & Perkins, of Mineral Wells, for appellees.

FLY, C. J. This is a suit for damages based on the death of J. M. Baucom, husband of Mrs. M. E. Baucom, and father of J. E. Baucom, Nellie Joe Baucom, Ivan C. Baucom, Donald D. Baucom, and Roderick Baucom, the first two being minors and represented by their mother, M. E. Baucom, as their next friend. The cause of the death of J. M. Baucom was alleged to have arisen through the negligence of appellant in causing or permitting its train to collide with the automobile of deceased while he was endeavoring to cross the track of appellant, in running the train at a rapid and reckless rate of speed, and in permitting brush and trees to grow on its right of way so as to conceal and obscure the approach of trains. Appellant answered by general and special exceptions, general denial, and a plea of contributory negligence upon the part of the deceased. The cause was submitted to a jury on special issues and upon the answers elicited judgment was rendered in favor of Mrs. M. E. Baucom for $6,500, of J. E. Baucom for $640, and of Nellie Joe Baucom for $1,500 the full amount of the verdict and judgment being $8,640. The court directed a verdict for appellant as against Ivan C. Baucom, Donald D. Baucom, and Roderick D. Baucom.

[1] The jury, in answer to the special issues submitted by the court, found that appellant did not blow a whistle 80 rods from the crossing where J. M. Baucom was injured, so that he died; that such failure to blow the whistle was not the proximate cause of the accident; that appellant was negligent in failing to ring the bell on approaching the crossing, but that such negligence was not the proximate cause of the accident; that appellant was guilty of negligence in running the train at a high and reckless rate of speed, and that such negligence was the proximate cause of the injury and death of J. M. Baucom. The jury also found that deceased was not guilty of contributory negligence. They found the damages and allotted them as hereinbefore indicated. The evidence was sufficient to sustain the findings

of the jury, and showed that the deceased was a careful driver, and approached the railroad track at a low rate of speed, and that his view was obscured by bushes and other things on the right of way, and that the automobile was struck by the locomotive, the cowcatcher being bent by the impact, and, although there was only one car attached to the locomotive, it ran 800 feet after striking the automobile, evidencing a dangerous rate of speed within the limits of the city of Mineral Wells. The brakes on the automobile were not defective.

The propositions of appellant fail to indicate the assignments of error upon which they are based, devolving on the court to consult the statements to ascertain whether the propositions have any basis in any of the assignments of error, and which ones.

The first, second, third, fourth, fifth, sixth, seventh, eighth, ninth, tenth, eleventh, twelfth, thirteenth, fourteenth, fifteenth, and sixteenth assignments assail the sufficiency of the evidence to sustain the answers of the jury to the different special issues submitted to them, and each and all of them are overruled. Our conclusions of fact meet them, but we will indicate evidence on some of them to show the untenability of them. In all the assignments of error it is stated either that the verdict of the jury is contrary to "the uncontradicted evidence," or is in the face of the "great preponderance of the evidence," when each of the points is established on conflicting facts, upon which a jury alone had the right to pass. Appellant rests its assertions upon evidence for appellant seeming to ignore the fact that the jury were empowered to base their verdict on the testimony of the witnesses offered by appellee, and to disregard conflicting testimony given by witnesses for appellant. For instance, the employés of appellant swore that the whistle was sounded and the bell rung by the trainmen on approaching the crossing, while Mrs. Healer and others swore that they heard neither bell nor whistle, and were in a position to have heard had the whistle been sounded or the bell been rung. Mrs. Healer said she could have heard the whistle had it been sounded. But what does it matter whether the whistle was sounded or bell rung or not? The jury found that such failure was not the proximate cause of the disaster.

[2] Of course the fireman and engineer swore that the train was not being run at a high and reckless rate of speed, but the jury had the right to conclude that a train that was going considerably faster than an automobile running at the rate of 35 miles an hour, so much faster that in a race with the train the train beat the automobile 150 yards in a mile, and ran 150 yards or more after the accident before it stopped, was moving at a high and reckless rate of speed. This was intensified by the fact that it was within

the limits of a city of 10,000 or more inhabitants. The evidence on all the points raised in the 16 assignments was fully sufficient to sustain the verdict of the jury.

[3] There is no merit in the complaint as to the verdict giving excessive damages. The sum is a small one for the life of a husband and father, and the evidence would have sustained a much larger sum. The young man was 19 years old when his father was killed, in October, 1921. The mother swore that her minor son was 19 and her minor daughter 17 years old, and yet in the sixth assignment of error it is stated that the son was 21 years old. The deceased was making a good living for the family and was worth more than the amount of the verdict to them.

[4, 5] It would have been gross error to have instructed the jury to return a verdict for appellant, and the seventeenth assignment asserting otherwise is overruled. It would have been preposterous to have required the jury to have answered what the rate of speed of the train was at 30 feet of the crossing. No witness could have truthfully sworn to facts that would sustain such a verdict, and the jury could not possibly have answered the question. It was sufficient for the jury to find that the train was moving at a reckless rate of speed when it reached the crossing. The circumstances bear them out in their finding of recklessness and negligence.

[6] Every issue material to the facts of the case was submitted by the court, and he properly refused to submit details that were covered by the charges given the jury. Such details as to what distance the automobile could have been stopped at the speed it was running when 30 feet from the track, at what distance could deceased have seen the train when he was 30 or 50 feet from the track, and like matters, were covered by the finding that deceased was not guilty of contributory negligence in approaching the crossing and going upon it. The assignments of error, from the eighteenth to the thirty-sixth, inclusive, are overruled. All the pertinent matter in the numerous requested instructions was embodied in the charge of the court, and no good end would have been accomplished by leading the jury into consideration of unimportant and impertinent details.

It is asserted in proposition 28 that the "uncontradicted evidence" was that the automobile driven by deceased when he was run down and wounded unto death was equipped with defective brakes, and the evidence of two doctors who were partners, one of them being the railroad physician, one witness the general foreman of the railroad company, and one the "chief investigator" of the railway, and Mrs. Baucom, is cited to sustain the assertion. All the evidence depended on was what the wounded man said while writh-

ing in agony in the office of the physicians. However, the testimony of Mrs. Baucom did not sustain the broad assertion of appellant, for she did not mention brakes, but swore that he only said:

"As I was coming around the curve at the crossing I never heard or saw the train until I turned towards the track, and I couldn't stop."

J. E. Lee, the "chief investigator," and the railroad doctor, Beeler, were not satisfied with stating the same things the other doctor and the general foreman did, but added that the wounded man said he was trying to beat the train over the crossing. The testimony as to the defective brakes, however, was not uncontradicted, because it was in proof that the deceased was a slow driver, and was driving at the rate of about eight miles an hour when he approached the track, and a son and daughter of deceased swore that a short while before the accident the brakes were in good order. The evidence of A. T. Chaney tended to contradict the evidence of the doctors and other employés of appellant. The "chief investigator" placed himself in the unenviable position of introducing himself to the mutilated and suffering victim of the crossing accident and drawing out of him while he was in this plight evidence that would destroy the claim against his employer for damages. It is suggestive that no two of the witnesses give the same version of the admissions of the suffering man. The jury believed the other evidence.

The judgment is affirmed.